[No. B150941. Second Dist., Div. Four. Apr. 4, 2002.]

DONNA DIOSDADO, Plaintiff and Appellant, v.
MANUEL DIOSDADO, Defendant and Respondent.

COUNSEL

Allred, Maroko & Goldberg, Nathan Goldberg and Renee Mochkatel for Plaintiff and Appellant.

Rudy Aguirre for Defendant and Respondent.

OPINION

EPSTEIN, Acting P. J.—In this case we conclude that a contract entered into between a husband and wife, providing for payment of liquidated damages in the event one of them is sexually unfaithful to the other, is unenforceable.

### FACTUAL AND PROCEDURAL SUMMARY

For the purpose of reviewing this grant of judgment on the pleadings, we take as true the allegations of the complaint and the facts presented to the trial court in an offer of proof.

Donna and Manuel Diosdado were married in November 1988. In 1993, Manuel had an affair with another woman. When Donna learned of this, the parties separated but did not divorce. Instead, they entered into a written "Marital Settlement Agreement" (hereafter the agreement) intended to "preserve, protect and assure the longevity and integrity of an amicable and beneficial marital relationship between them."

Section 1 of the agreement provides that if either party expresses concern that the goals of the marriage are not being met, they agree to seek counseling and make a good faith effort to resolve their problems to preserve the relationship.

Section 2 is labeled "Obligation of Fidelity," and provides: "It is further acknowledged that the parties' marriage is intended to be an exclusive relationship between Husband and Wife that is premised upon the values of emotional and sexual fidelity, and mutual trust. The parties hereto are subject to a legal obligation of emotional and sexual fidelity to the other. It shall be considered a breach of such obligation of fidelity to volitionally engage in any act of kissing on the mouth or touching in any sexual manner of any person outside of said marital relationship, as determined by a trier of fact. The parties acknowledge their mutual understanding that any such breach of fidelity by one party hereto may cause serious emotional, physical and financial injury to the other."

Section 3 is labeled "Liquidated Damages." It provides:

"In the event it is shown by a preponderance of the evidence in a court of competent jurisdiction that either party has engaged in any breach of the obligation of sexual fidelity as defined hereinabove . . . and, additionally, that election is made by one or both parties to commence an action to terminate the marriage by divorce because of said breach, the following terms and conditions shall become effective:

"(a) The party shown to have committed the breach shall vacate the family residence immediately upon the completion of a showing of breach as defined above;

"(b) The party shown to have committed the breach will be solely responsible for all attorney fees and court costs incurred as a result of or in connection with the litigation of any issue surrounding or relating to said breach;

"(c) The party shown to have committed the breach will pay the other party (hereinafter, the 'recipient') liquidated damages for said breach in the sum of $50,000, said sum to be paid over and above, and irrespective of, any property settlement and/or support obligation imposed by law as a result of said divorce proceeding. Said damages shall be due and payable on a date that is no later than six (6) months following entry of judgment of dissolution of marriage by a court of competent jurisdiction. Said damages shall become the sole and separate property of the recipient, except that, should

said recipient remarry at any time following such payment, said damages shall be fully and completely refunded to the party shown to have committed the breach. Said refund shall be due and payable on a date no later than six (6) months following the date of the recipient's remarriage.

"(d) Both parties shall cooperate in the negotiation and execution of a reasonable property settlement and support agreement for the resolution of said divorce proceeding so as to minimize the emotional and financial expense of said litigation."

The agreement was drafted by Manuel's attorney, and both Donna and Manuel signed it voluntarily in December 1993. They resumed living together.

In 1998, Manuel again had an affair with another woman. When Donna learned of it, she confronted Manuel, who denied it. Donna obtained independent verification from a witness who saw Manuel kissing this other woman. The parties separated in August 1998, and thereafter divorced.

Donna then brought this action for breach of contract in February 2000, seeking to enforce the liquidated damages clause of the agreement. On the first day of trial, the trial court, on its own motion, granted a judgment on the pleadings in favor of Manuel. Donna appeals from the judgment.

### DISCUSSION

The only question before this court is whether the agreement is enforceable. The trial court found that it was not because it was contrary to the public policy underlying California's no-fault divorce laws. That reasoning is sound.

In 1969, California enacted Civil Code section 4506 (now Fam. Code, § 2310), providing for dissolution of marriage based on irreconcilable differences which have caused the irremediable breakdown of the marriage. This change was explained in *In re Marriage of Walton* (1972) 28 Cal.App.3d 108, 119 [104 Cal.Rptr. 472]: "After thorough study, the Legislature, for reasons of social policy deemed compelling, has seen fit to change the grounds for termination of marriage from a fault basis to a marriage breakdown basis."

With certain exceptions (such as child custody matters or restraining orders), "evidence of specific acts of misconduct is improper and inadmissible" in a pleading or proceeding for dissolution of marriage. (Fam. Code,

§ 2335.) Fault is simply not a relevant consideration in the legal process by which a marriage is dissolved. Recovery in no-fault dissolution proceedings "is basically limited to half the community property and appropriate support and attorney fee orders—no hefty premiums for emotional angst." (*Askew v. Askew* (1994) 22 Cal.App.4th 942, 960 [28 Cal.Rptr.2d 284].)

Contrary to the public policy underlying California's no-fault divorce laws, the agreement between Donna and Manuel attempts to impose just such a premium for the "emotional angst" caused by Manuel's breach of his promise of sexual fidelity.[1] The agreement expressly states the parties' "mutual understanding that any such breach of fidelity by one party hereto may cause serious emotional, physical and financial injury to the other." The agreement then imposes a penalty on the breaching party, in the event either party chooses to terminate the marriage "because of said breach." This penalty includes "liquidated damages for said breach in the sum of $50,000," over and above any property settlement or support obligations imposed in the dissolution proceeding.

The family law court may not look to fault in dissolving the marriage, dividing property, or ordering support. Yet this agreement attempts to penalize the party who is at fault for having breached the obligation of sexual fidelity, and whose breach provided the basis for terminating the marriage. This penalty is in direct contravention of the public policy underlying no-fault divorce.

To be enforceable, a contract must have a "lawful object." (Civ. Code, § 1550, subd. 3.) A contract is unlawful if it is contrary to an express provision of law, contrary to the policy of express law, or otherwise contrary to good morals. (Civ. Code, § 1667.) Here, where the agreement attempts to impose a penalty on one of the parties as a result of that party's "fault" during the marriage, it is contrary to the public policy underlying the no-fault provisions for dissolution of marriage. (See Fam. Code, §§ 2310, 2335.) For that reason, the agreement is unenforceable.

Donna claims a different result is required, based on two Supreme Court cases. We find these cases inapplicable.

In the first, *In re Marriage of Bonds* (2000) 24 Cal.4th 1 [99 Cal.Rptr.2d 252, 5 P.3d 815], the court addressed the enforceability of a premarital agreement. Its concern was that one party was not represented by independent counsel at the time the agreement was executed. The court held that

---

[1] Donna made an offer of proof that she suffered emotional harm as a result of the breach, that it caused her a great deal of emotional upset and trauma and that she suffered actual emotional damages as a result of the breach.

circumstance is only one of several factors to be considered in determining whether a premarital agreement had been entered into voluntarily, and hence is enforceable pursuant to Family Code section 1615. (*In re Marriage of Bonds* at p. 24.) There is no issue in our case concerning voluntariness.

What is informative in *Bonds* is the distinction the court drew between the freedom of contract found in ordinary commercial contracts and the existence of limitations in marital agreements. The court recognized that "marriage itself is a highly regulated institution of undisputed social value, and there are many limitations on the ability of persons to contract with respect to it, or to vary its statutory terms, that have nothing to do with maximizing the satisfaction of the parties or carrying out their intent. . . . These limitations demonstrate further that freedom of contract with respect to marital arrangements is tempered with statutory requirements and case law expressing social policy with respect to marriage." (*In re Marriage of Bonds, supra,* 24 Cal.4th at pp. 25-26.) *Bonds* does not support Donna's position.

Donna finds no greater support in the second case, *In re Marriage of Pendleton and Fireman* (2000) 24 Cal.4th 39 [99 Cal.Rptr.2d 278, 5 P.3d 839]. In *Pendleton,* the Supreme Court held that a premarital agreement waiving spousal support does not violate public policy, and is not per se unenforceable. (*Id.* at pp. 53-54.) That decision provides no authority for enforceability of an agreement between spouses to pay damages in the event one party engages in sexual infidelity.

Judgment on the pleadings was properly granted in this case.

### DISPOSITION

The judgment is affirmed.

Hastings, J., and Curry, J., concurred.